NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| NEW JERSEY BUILDING LABORERS | : | |
| STATEWIDE BENEFIT FUNDS AND THE | : | |
| TRUSTEES THEREOF, | : | |
| | : | |
| Petitioners, | : | Civil Action No. 13-7272 |
| | : | |
| v. | : | **OPINION** |
| | : | |
| SPERANZA BRICKWORK, INC., | : | |
| | : | |
| Respondent. | : | |
| | : | |

This matter comes before the Court on two motions:  1) the motion to confirm the arbitration

award by Petitioner New Jersey Building Laborers' Statewide Benefit Funds (the "Funds"); and 2)

the motion to vacate the arbitration award by Respondent Speranza Brickwork, Inc. ("Speranza").

The Court has considered the parties' submissions and held oral argument on August 4, 2014.  For

the reasons that follow, the Court grants the motion to confirm the arbitration award, and denies the

motion to vacate the arbitration award.

## I.     Background

This case concerns a labor dispute that was heard by arbitrator J.J. Pierson (the

"Arbitrator").  Speranza is a construction company that principally performs "brick and masonry"

work in New Jersey, and which primarily employs bricklayers and laborers from trade unions to

perform the work.  According to the Funds, at all relevant times, Speranza has been a party to the

Collective Bargaining Agreement with the New Jersey Building Laborers' District (the "CBA").

This dispute is based on the benefit fund obligations and contributions of Speranza to the Funds

under this CBA.  Specifically, after an audit was conducted on Speranza's payroll records, the

Funds found that Speranza was deficient in contributions to the Funds in accordance with the CBA

for all employees performing bargaining unit work.  After conducting hearings on December 12, January 30, February 26, and March 15, 2013, the Arbitrator issued a final decision (the "Award") on July 8, 2013.  The Award ordered, *inter alia*, Speranza to pay the Funds $4,901,819.05.  The Funds then filed suit in this Court to confirm the Award, and Speranza cross-moved to vacate the Award.

Speranza moves to vacate the Award primarily on the grounds that there is no basis in the record to support the Arbitrator's determination that Speranza was bound to the collective bargaining agreement and had agreed to arbitrate disputes.  Speranza also argues that, even if it was bound to a collective bargaining agreement, the Award was clearly erroneous because there was no proof that Speranza's employees performed work subject to the terms of the CBA.  Finally, Speranza argues that the Federal Arbitration Act ("FAA") does not apply to collective bargaining agreements.

## II.    Legal Analysis

The FAA creates a strong presumption in favor of enforcing arbitration awards.  *See Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005). Pursuant to the FAA, a district court may vacate an arbitration award only under a limited number of circumstances, including: (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.  9 U.S.C. § 10(a)(1)–(4).

Generally, "[a]s long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." *United Paperworks Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987) (quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).  Thus, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Misco*, 484 U.S. at 38.  "Neither a court's disagreement with the arbitrator's construction of a contract nor its belief that its interpretation of a contract is better justifies a court overruling the arbitrator." *Exxon Corp. v. Local Union 877, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 980 F. Supp. 752, 760 (D.N.J.1997) (citing *News America Publications, Inc. Daily Racing Form Div. v. Newark Typographical Union, Local 103*, 918 F.2d 21, 24 (3d Cir.1990)).

## III.    Discussion

### A.    The FAA Applies to this Collective Bargaining Agreement

First, Speranza contends that the FAA does not apply to collective bargaining agreements in the labor industry.   Speranza bases this argument on Section 1 of the FAA, which reads that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  9 U.S.C. § 1.  Speranza urges that this clause should be interpreted broadly to exclude all collective bargaining agreements as "contracts of employment." *See* Opp. Br. at 13.  The Third Circuit, however, has held that the exclusionary clause of Section 1 refers only to workers actually engaged in interstate commerce; accordingly, the FAA "undoubtedly" applies to collective bargaining agreements as long as the employees at issue were not included within the class of those excepted under Section 1. *Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers of Am., (U.E.) Local 437*, 207 F.2d 450, 453 (3d

Cir. 1953); *see also Palcko v. Airborne Express Inc.*, 372 F.3d 588, 593 (3d Cir. 2004) (affirming

the analysis of the exception clause of § 1 in the context of a labor dispute under *Tenney*).

Likewise, courts in this District have noted that the FAA's exclusion clause "is limited to those

employment contracts in the transportation industries and does not affect collective bargaining

agreements in other areas." *Nieves v. Individualized Shirts*, 961 F. Supp. 782, 791 (D.N.J. 1997);

*see also United Food & Commercial Workers Union, Local 464A v. Foodtown, Inc.*, 317 F. Supp.

2d 522, 526 (D.N.J. 2004) ("The FAA pertains to all employment contracts outside the

transportation and maritime industries.") (citing *Circuit City Stores v. Adams,* 532 U.S. 105, 114–15

(2001)); *Farmland Dairies, Inc. v. Milk Drivers & Dairy Employees Union Local 680, Int'l Bhd. of*

*Teamsters, AFL-CIO*, 956 F. Supp. 1190, 1202 (D.N.J. 1997) (finding that, pursuant to *Tenney*, the

exclusionary clause in § 1 is limited to contracts of workers in the transportation industries).

Accordingly, Speranza's broad interpretation of the exclusionary clause is at odds with Third

Circuit precedent.  The Union here has no connection with the transportation industry.  Therefore,

Section 1 has no application to this case, and the FAA applies to this matter.

      B.     Speranza is Bound to the CBA

     The crux of Speranza's argument is its contention that the Award should be vacated because

it was not bound to the collective bargaining agreement.  Speranza relies on the undisputed fact that

the Funds were unable to provide and submit into evidence during the arbitration any written

document—including a collective bargaining agreement—that bore the name of Joseph Speranza,

"the only authorized signatory of [Speranza]."  Opp. Br. at 8.  Speranza argues that the Award

should be vacated because the Arbitrator did not have the jurisdiction to determine if it was a party

to the collective bargaining agreement.  After all, it is well-settled that "arbitration is a matter of

contract and a party cannot be required to submit to arbitration any dispute which he has not agreed

so to submit."  *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582

(1960).  "Unless the parties clearly and unmistakably provide otherwise, the question of whether the

parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T Techs. v.*

*Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

Here, the Arbitrator was within his powers to find that the Speranza had agreed to submit to

arbitration.  As the Funds point out, and as noted by the Arbitrator, Speranza itself has attested to

being a signatory to a collective bargaining agreement with the New Jersey Laborers District

Council ("NJLDC") in its verified complaint filed in an earlier action in this Court.  *See*

Certification of Brian Tremer ("Tremer Cert.") Ex. I.  In fact, Speranza's verified complaint in

*Speranza Brickwork, Inc. v. New Jersey Building Laborers' Political Action Committee, et al.*, Civil

Action No. 13-1101 (D.N.J. Feb. 26, 2013), relies on its status as a signatory of the CBA—the same

contractual relationship it questioned before the Arbitrator and before this Court.[1]  In that action,

Speranza sought a temporary restraining order, enjoining the underlying arbitration here based on

the Funds' failure to provide certain Check-Off authorizations executed by Union members who

were included in the audit that revealed Speranza's deficient contributions.   Specifically,

throughout the verified complaint, Speranza attests that it is a signatory to the collective bargaining

agreement and that it has certain contractual obligations under this agreement.  *See* Tremer Cert. Ex.

I at ¶¶ 1, 11, 15.  Importantly, Speranza defines itself as "an employer who is engaged in the

construction industry in New Jersey and **signatory to a collective bargaining agreement with the**

**New Jersey Building Laborers Union** consisting of Locals 3, 77, 78 and 55."  *Id.* at ¶ 1 (emphasis

added).  Indeed, while the Funds did not put into evidence any document signed by Joseph

Speranza, the Arbitrator specifically noted that Mr. Speranza submitted a certification to this Court

in which he stated that Speranza employed laborers of the local unions "pursuant to the terms of a

collective bargaining agreement with the New Jersey Building Laborers Union," and thereafter

---

[1] It is also noteworthy that Speranza made no attempt at that point to enjoin the arbitration proceeding on the basis that there was no agreement to arbitrate.

directly references the CBA between the New Jersey District Council and the Masonry Contractor's

Association of New Jersey.  *See* Tremer Cert. Ex. J at ¶¶ 4, 5.  In this certification, Mr. Speranza

also verifies that all the allegations in the complaint were "true and accurate to the best of [his]

knowledge, information and belief."  *Id.* at ¶ 8.

As the Award shows, the Arbitrator weighed this sworn testimony by Speranza in making

his determination that Speranza is a signatory to the CBA.  When Speranza itself states that it is a

signatory to the CBA, there is no question of law left for this Court to determine.  After all, the

decision of whether parties have agreed to arbitrate is for the court "unless the parties clearly and

unmistakably provide otherwise . . . ."  *AT & T Techs.*, 475 U.S. at 649.  Other than the actual

signed CBA, the Court cannot think of clearer or more unmistakable evidence of an agreement to

arbitrate than a party attesting to such a fact.  Based on both the verified complaint and Mr.

Speranza's certification, there can be no doubt as to the existence of Speranza's CBA status with the

NJLDC.  To find that the Arbitrator could not find that Speranza is a signatory to the CBA in the

face of such clear evidence flies in the face of common sense.[2]

Furthermore, even if the Arbitrator did inappropriately determine if Speranza had agreed to

arbitrate this dispute, principles of judicial estoppel prevent Speranza from advancing its argument

in this Court that it is not a signatory to the CBA.  Speranza cannot argue that it is not a party to the

CBA when it has attested to being a party to this CBA in a different proceeding in this Court under

penalty of punishment; in other words, Speranza may not only allege to be a signatory to the CBA

when it works to its advantage.  Such behavior signals an "intent to play fast and loose with the

court."  *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779 (3d Cir. 2001)

---

[2] The Court also agrees with the Arbitrator's finding that Speranza evidenced an "intent to be bound" to the terms and conditions of the CBA based upon the submission of contributions and over 4,000 signed remittance forms to the Funds. These remittance forms state that the employer agrees to be bound to all the provisions, terms, and conditions of the CBA.  The Court likewise agrees Speranza's membership with the Masonry Contracting Association, an employer association signatory to the CBA, signals an intent to be bound to the terms and conditions of the CBA, particularly where Speranza is considered to have assigned its bargaining rights to the association for an extended period of time.

6

(citing *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir. 1996)).  In sum, Speranza has failed to persuade this Court that it was not bound by the CBA.  Accordingly, the Court will not vacate the Award on these grounds.

      C.      The Arbitrator's Findings are Rationally Derived from the CBA

Finally, Speranza has argued that the Award should be vacated because there was no proof that its employees were performing collective bargaining work under the terms of the CBA. Speranza's arguments, however, ignore the standard that this Court must apply when reviewing an arbitrator's decision.  Judicial review of the arbitrator's decision is limited to "whether or not an arbitrator's award 'draws its essence' from the parties' collective bargaining agreement." *Brentwood Med. Associates v. United Mine Workers of Am.*, 396 F.3d 237, 240 (3d Cir. 2005) (quoting *Misco*, 484 U.S. at 36).  As the Third Circuit has explained:

> An award draws its essence from a collective bargaining agreement if its interpretation can *in any rational way* be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention. As a general rule, we must enforce an arbitration award if it was based on an arguable interpretation and/or application of the collective bargaining agreement, and may only vacate it if there is no support in the record for its determination or if it reflects manifest disregard of the agreement, totally unsupported by principles of contract construction.

*Id.* (citations omitted) (emphasis in original).   A court may not "correct factual or legal errors made by an arbitrator," *id.*, even if the arbitrator's factfinding is "improvident, even silly . . . ." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (quotation omitted).

Here, Speranza argues that the Arbitrator inappropriately considered testimony relating to the audit.  A review of the Arbitrator's decision shows that he, in interpreting the CBA, found that the Funds properly invoked their rights to direct an independent auditor to determine whether Speranza remitted contributions for the relevant time period.  The Arbitrator also found that Speranza's attempt to contest the legitimacy of the audit had no merit.  Based upon the proofs

submitted and the CBA, the Arbitrator concluded that the work for which Speranza failed to make payments was work performed under the CBA.

These findings are clearly "rationally derived" from the CBA, and the Court is not authorized to otherwise correct factual or legal errors made by the Arbitrator. *See Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 281 (3d Cir. 2004) (quotation omitted). While the Arbitrator did not go into great depth on why the work which Respondent failed to make contributions for was CBA work, this finding clearly has support in the record. For example, Mr. Speranza testified that the employees that he failed to make contributions for were working in Speranza's yard fixing scaffolds, bending and cutting rods, and cutting bricks. Article II of the CBA includes such yardmen work. Further, while Mr. Speranza testified that some of the other employees that he did not make contributions for built fireplaces or garages on residential housing, he failed to provide any business records or other evidence to show when employees would perform this type of work as opposed to yardmen work. These arguments were made to and considered by the Arbitrator in his decision. Accordingly, the Court is more than satisfied that these holdings by the Arbitrator are "based on an arguable interpretation and/or application of the collective bargaining agreement." *Brentwood Med.*, 396 F.3d at 241.

For these same reasons, Speranza's argument regarding the Fund being unjustly enriched for benefits paid directly to the employees and for collection of benefits for non-union workers must fail. This argument is based on Speranza's contention that the work performed by its employees was not CBA work; however, as discussed, the Arbitrator found that Speranza's employees were performing CBA work. The Court cannot review this factual finding by the Arbitrator. *See Brentwood Med.*, 396 F.3d at 241. The Arbitrator then found that the clear language of Article

8

10.70[3] of the CBA mandated that Speranza contribute benefits for employees, regardless of union membership, that are performing CBA work.  The Arbitrator also noted that the CBA prohibited Speranza from paying benefits "in the envelope" to any employee performing CBA work.  Because the work performed by Speranza's employees was CBA work, the Arbitrator concluded that Speranza's failure "to make those contributions to the Funds and, instead, placing the money 'in the envelope' violated Article 10.07(k) of the CBA."   Tremer Cert. Ex. A at 7–8.  The Court finds that this conclusion is rationally derived from the CBA.  As such, the Court is satisfied that the Award here draws its essence from the CBA, and the Court is now without jurisdiction to consider the Award further.  *See Brentwood Med.*, 396 F.3d at 240–41.

**IV.     Conclusion**

For the foregoing reasons, the Arbitrator's decision is confirmed.  The motion to confirm the Award is granted, and the motion to vacate the Award is denied.  An appropriate Order accompanies this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.


Dated:  August 27, 2014

---

[3] In relevant part, Section 10.70(k) states:  "Fringe benefit contributions shall be due on all hours paid. . . . Benefits shall be paid on behalf of all persons performing work covered by this Agreement, regardless of union membership.  The Employer may not at any time pay benefits in the envelope to any employee performing work covered by this Agreement. . . ."